## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| CHERI CASOLARI, DAN LEWIS, BERENICE BERNIER, CHAKA THEUS, and SONDRA TRENT, Individually and on Behalf of All Others Similarly Situated, | Case No.   1:22-cv-235 **CLASS ACTION COMPLAINT** <u>Jury Trial Demanded</u> |
| Plaintiffs, | |
| v. | |
| THE PROCTER & GAMBLE COMPANY, | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Upon personal knowledge as to their own acts, and based upon their investigation, the investigation of counsel, and information and belief as to all other matters, Plaintiffs Cheri Casolari Dan Lewis, Berenice Bernier, Chaka Theus, and Sondra Trent, on behalf of themselves and all others similarly situated, allege as follows:

## NATURE OF THE ACTION

1.      This is a class action brought on behalf of persons who purchased certain aerosol antiperspirant and deodorant sprays and aerosol dry conditioner and dry shampoo products manufactured, marketed, advertised, and distributed by Defendant The Procter & Gamble Company ("P&G") which were contaminated with the harmful chemical benzene, a known carcinogen.

2.      P&G is a global leader in providing a wide range of household personal care goods, including in the health and beauty products segments, which P&G manufactures, distributes, markets, and sells nationwide. P&G warrants that these products are safe, effective, and fit for human application. In fact, contrary to consumers' knowledge and reasonable expectations, several of P&G's aerosol products were contaminated or adulterated with benzene—rendering such

products unsafe, ineffective, unfit for the ordinary purpose for which these health and beauty products are used, and otherwise worthless.

3.　　In 2021, the independent laboratory Valisure LLC ("Valisure") tested a variety of manufacturers' antiperspirant and deodorant sprays and detected that a number of P&G's spray products contained benzene. Valisure thereafter filed a follow-on citizen's petition on November 3, 2021 with the U.S. Food & Drug Administration ("FDA") asking the agency to recall all batches aerosol antiperspirant and deodorant sprays that contained 0.1 parts per million ("ppm") or more of benzene.[1] Valisure stated that its testing revealed several of these products contained 0.1 ppm or more of benzene, and thus were adulterated under Section 501 of the Federal Food, Drug, and Cosmetic Act ("FDCA") (21 U.S.C. § 351) and misbranded under Section 502 of the FDCA (21 U.S.C. § 352). Of the 38 tested product batches which yielded more than 0.1 ppm of benzene, more than one-third (13 in total) were sold under P&G's Secret and Old Spice brands.

4.　　Following Valisure's reporting on benzene in certain of P&G's spray products, on November 23, 2021, P&G announced the voluntary recall of specific aerosol antiperspirant and deodorant sprays under its Old Spice and Secret brands due to the detection of benzene therein, as more fully described below (the "Recalled Aerosol Antiperspirant Products"). Weeks later, on December 17, 2021, P&G issued a further voluntary recall of specific aerosol dry conditioner and dry shampoo products under its Pantene, Aussie, Herbal Essences, and Waterless brands (as well as certain discontinued dry shampoo products under its Old Spice and Hair Foods brands) due to the detection of benzene therein, as more fully described below (the "Recalled Hair Spray Products"). Together, the Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products are sometimes referred to herein as the "Recalled Products."

5.　　The health hazards associated with benzene have been recognized for over a hundred years and the FDA states that "[b]enzene is a carcinogen that can cause cancer in

---

[1] Valisure Citizen Petition on Benzene in Body Spray Products (Nov. 3, 2021), *available at* https://assets-global.website-files.com/6215052733f8bb8fea016220/626af96f521a0584e70e50eb _Valisure%20FDA%20Citizen%20Petition%20on%20Body%20Spray%20v4.0%5B260%5D. pdf.

humans,"[2] classifying it as "Class 1" solvent that should be "avoided."[3] No amount of benzene is acceptable in aerosol antiperspirant and deodorant sprays and aerosol dry conditioner and dry shampoo products, such as P&G's Recalled Products.

6.       Benzene is not listed as an active or inactive ingredient on any of the labels of P&G's Recalled Products. Indeed, P&G specifically states that benzene is one of the materials "we do not use as ingredients in any of our formulated products."[4]

7.       Through this action, Plaintiffs, both individually and on behalf of classes of other similarly situated purchasers of the Recalled Products, seek all applicable and available relief and damages under the laws of Illinois, Arizona, California, Florida, and the United States.

## PARTIES

8.       Plaintiff Cheri Casolari is a citizen of Illinois and resident of Rinard, Illinois. On multiple occasions on or around August, October, and December 2021, Plaintiff Casolari purchased Defendant's Pantene Smooth Talker Dry Conditioning Oil, 3.9oz and Pantene Mist Behaving Dry Conditioning Mist, 3.9oz products from Walmart stores located in Flora, Illinois and Fairfield, Illinois. At the time Plaintiff Casolari purchased these Recalled Products, due to the false and misleading claims, warranties, representations, advertisements, and other marketing by Defendant, she was unaware that the Recalled Products were contaminated with benzene, a known carcinogen. Plaintiff Casolari would not have purchased the Recalled Products if Defendant had disclosed that the Recalled Products contained the carcinogen benzene. As a result, Plaintiff Casolari suffered injury in fact when she spent money to purchase products that she would not otherwise have purchased absent Defendant P&G's misconduct and unlawful actions, as alleged herein.

---

[2]  https://www.fda.gov/food/chemical-contaminants-food/questions-and-answers-occurrence-benzene-soft-drinks-and-other-beverages#q1 (last visited Apr. 27, 2022).

[3]  https://www.fda.gov/media/133650/download (last visited Apr. 27, 2022).

[4]  https://us.pg.com/ingredients/ (last visited Apr. 24, 2022).

9.      Plaintiff Dan Lewis is a citizen of Arizona and resident of Buckeye, Arizona. In the six months before the announced recall, Plaintiff Lewis purchased Defendant's Old Spice Below Deck Powder Spray approximately two to three times per month. At the time Plaintiff Lewis purchased these Recalled Products, due to the false and misleading claims, warranties, representations, advertisements, and other marketing by Defendant, he was unaware that the Recalled Products were contaminated with benzene, a known carcinogen. Plaintiff Lewis would not have purchased the Recalled Products if Defendant had disclosed that the Recalled Products contained the carcinogen benzene. As a result, Plaintiff Lewis suffered injury in fact when he spent money to purchase products that he would not otherwise have purchased absent Defendant P&G's misconduct and unlawful actions, as alleged herein.

10.      Plaintiff Berenice Bernier is a citizen of California and resident of Winnetka, California. For at least the past ten years before the announced recall, Plaintiff Bernier regularly purchased Defendant's Secret Aerosol Powder Fresh Twin Pack approximately monthly or bi-monthly from CVS and Walmart stores located in Los Angeles, California. At the time Plaintiff Bernier purchased these Recalled Products, due to the false and misleading claims, warranties, representations, advertisements, and other marketing by Defendant, she was unaware that the Recalled Products were contaminated with benzene, a known carcinogen. Plaintiff Bernier would not have purchased the Recalled Products if Defendant had disclosed that the Recalled Products contained the carcinogen benzene. As a result, Plaintiff Bernier suffered injury in fact when she spent money to purchase products that she would not otherwise have purchased absent Defendant P&G's misconduct and unlawful actions, as alleged herein.

11.      Plaintiff Chaka Theus is a citizen of California and resident of Hawthorne, California. On multiple occasions at relevant times, Plaintiff Theus purchased several of Defendant's Recalled Products from Walmart and Walgreens stores located in Paramount, Long Beach, and Hawthorne, California, including Defendant's Secret Outlast Inv Spray Protecting Powder. At the time Plaintiff Theus purchased these Recalled Products, due to the false and misleading claims, warranties, representations, advertisements, and other marketing by Defendant,

she was unaware that the Recalled Products were contaminated with benzene, a known carcinogen. Plaintiff Theus would not have purchased the Recalled Products if Defendant had disclosed that the Recalled Products contained the carcinogen benzene. As a result, Plaintiff Theus suffered injury in fact when she spent money to purchase products that she would not otherwise have purchased absent Defendant P&G's misconduct and unlawful actions, as alleged herein.

12.     Plaintiff Sondra Trent is a citizen of Florida and resident of Edgewater, Florida. On multiple occasions at relevant times, Plaintiff Trent purchased Defendant's Pantene Mist Behaving Dry Conditioning Mist. At the time Plaintiff Trent purchased these Recalled Products, due to the false and misleading claims, warranties, representations, advertisements, and other marketing by Defendant, she was unaware that the Recalled Products were contaminated with benzene, a known carcinogen. Plaintiff Trent would not have purchased the Recalled Products if Defendant had disclosed that the Recalled Products contained the carcinogen benzene. As a result, Plaintiff Trent suffered injury in fact when she spent money to purchase products that she would not otherwise have purchased absent Defendant P&G's misconduct and unlawful actions, as alleged herein.

13.     Defendant P&G is an Ohio corporation with its headquarters at 1 P&G Plaza, Cincinnati, Ohio 45202. Defendant P&G manufactures and distributes its products—including the Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products—throughout Illinois, Arizona, California, Florida, and the United States. Defendant P&G authorized and/or created the false, misleading, and deceptive marketing and advertising of the Recalled Products.

## JURISDICTION AND VENUE

14.     This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d), because at least one class member is a citizen of a state other than that of Defendant, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

15.     This Court has personal jurisdiction over Defendant because Defendant is headquartered in this State and regularly sells and markets its products in Ohio. Defendant derives

substantial revenue from sales of its products in this State, with knowledge that its products are being marketed and sold for use in Ohio.

16.     This Court has personal jurisdiction over the Plaintiffs because Plaintiffs submit to the Court's jurisdiction.

17.     Venue is proper in this District under 28 U.S.C. §1391 because many of the acts and transactions giving rise to this action occurred in this District, Defendant conducts substantial business in this District, Defendant has intentionally availed itself of the laws and markets of this District, Defendant's principal place of business is located in this District, and Defendant is subject to personal jurisdiction in this District.

## FACTUAL BACKGROUND

18.     Benzene is a component of crude oil, gasoline, and cigarette smoke. Its harmful effects and dangers are widely known. For instance, the U.S. Department of Health & Human Services has determined that benzene causes cancer in humans. Likewise, given its Class 1 status, the FDA describes benzene as a chemical which "should not be employed in the manufacture of drug substances, excipients, and drug products because of [its] unacceptable toxicity." The National Toxicology Program found benzene "*known to be a human carcinogen* based on sufficient evidence of carcinogenicity from studies in humans."[5] Additionally, The World Health Organization and the International Agency for Research on Cancer have classified benzene as a Group 1 compound, thereby defining it as "carcinogenic to humans."

19.     Long-term benzene exposure is linked to leukemia and other blood disorders. According to the Centers for Disease Control and Prevention, benzene works by causing cells not to work correctly. Benzene "can cause bone marrow not to produce enough red blood cells, which can lead to anemia," can "damage the immune system by changing blood levels of antibodies and causing the loss of white blood cells," and lead to "excessive bleeding."[6] According to the National

---

[5]  Department of Health & Human Services, 15th Report on Carcinogens (2021), https://ntp.niehs.nih.gov/ntp/roc/content/profiles/benzene.pdf (emphasis in original).

[6] https://emergency.cdc.gov/agent/benzene/basics/facts.asp (last visited Apr. 26, 2022).

Institute for Occupational Safety and Health, benzene exposure can occur through inhalation, skin absorption, ingestion, skin and/or eye contact.[7] In its November 23 and December 17, 2021 product recall notices, P&G agrees with the foregoing risks, stating: "Benzene is classified as a human carcinogen. Exposure to benzene can occur by inhalation, orally, and through the skin and it can result in cancers including leukemia and blood cancer of the bone marrow and blood disorders which can be life-threatening."[8]

20.     The FDA regulates antiperspirants to ensure they meet safety and effectiveness standards. Under FDA regulations, antiperspirants such as P&G's Recalled Aerosol Antiperspirant Products are considered over-the-counter drugs rather than cosmetics. Benzene is not among the acceptable active ingredients for antiperspirant products. *See* 21 C.F.R. § 350.10.

21.     P&G does not list benzene as either an active or inactive ingredient on any of its labels of the Recalled Products. To the contrary, P&G affirmatively warrants and represents that benzene is one of the materials "we do not use as ingredients in any of our formulated products." Consumers like Plaintiffs and members of the classes lack the meaningful ability to test or independently verify whether health and beauty products such as the Recalled Products contain unsafe substances or chemicals like benzene, particularly at the point of sale. Thus, Plaintiffs and members of the class must rely on manufacturers such as P&G to truthfully and honestly report these goods' contents on their packaging and labeling. Consumers' reliance on such representations is reasonable under the circumstances. Furthermore, P&G understands that these

---

[7] https://www.cdc.gov/niosh/npg/npgd0049.html (last visited Apr. 26, 2022).

[8] P&G Issues Voluntary Recall of Specific Old Spice and Secret Aerosol Spray Antiperspirant Products Due to Detection of Benzene (Nov. 23, 2021), *available at* https://news.pg.com/news-releases/news-details/2021/PG-Issues-Voluntary-Recall-of-Specific-Old-Spice-and-Secret-Aerosol-Spray-Antiperspirant-Products-Due-to-Detection-of-Benzene/default.aspx; P&G Issues Voluntary Recall of Aerosol Dry Conditioner Spray Products and Aerosol Dry Shampoo Spray Products (Dec. 17, 2021), *available at* https://news.pg.com/news-releases/news-details/2021/PG-Issues-Voluntary-Recall-of-Aerosol-Dry-Conditioner-Spray-Products-and-Aerosol-Dry-Shampoo-Spray-Products/default.aspx.

representations would be important to a reasonable consumer in deciding whether to purchase the Recalled Products rather than competing products.

22.     On November 23, 2021—approximately three weeks after Valisure's Citizen Petition—P&G announced it would voluntarily recall all lots of specific Old Spice and Secret aerosol spray antiperspirants with expiry through September 2023 and certain additional Old Spice spray products due to the presence of benzene detected. P&G's November 2021 recall covered the following eighteen Recalled Aerosol Antiperspirant Products:

| P&G Recalled Aerosol Antiperspirant Products | UPC |
|---|---|
| Old Spice High Endurance AP Spray Pure Sport 12/6oz | 012044001912 |
| Old Spice Hardest Working Collection Inv Spray Stronger Swagger 3.8oz | 012044044759 |
| Old Spice Hardest Working Collection Inv Spray Pure Sport Plus 12/3.8oz | 037000729747 |
| Old Spice Hardest Working Collection Inv Spray Stronger Swagger 12/3.8oz | 037000730347 |
| Old Spice Hardest Working Collection Inv Spray Ult Captain 12/3.8oz | 037000749479 |
| Old Spice Below Deck Powder Spray Unscented 12/4.9oz | 037000695714 |
| Old Spice Below Deck Powder Spray Fresh Air 12/4.9oz | 037000695707 |
| Secret Aerosol Powder Fresh Twin Pack | 037000586906 |
| Secret Aerosol Powder Fresh 12/6oz | 037000711087 |
| Secret Aerosol Powder Fresh 12/4oz | 037000711094 |
| Secret Fresh Collection Inv Spray Waterlily 3.8oz | 037000723721 |
| Secret Fresh Collection Inv Spray Lavender 12/3.8oz | 037000729860 |
| Secret Fresh Collection Inv Spray Water Lily 12/3.8oz | 037000729914 |
| Secret Fresh Collection Inv Spray Light Essentials 12/3.8oz | 037000729921 |
| Secret Fresh Collection Inv Spray Rose 12/3.8oz | 037000798842 |

| P&G Recalled Aerosol Antiperspirant Products | UPC |
|---|---|
| Secret Outlast Inv Spray Completely Clean 12/3.8oz | 037000747642 |
| Secret Outlast Inv Spray Protecting Powder 12/3.8oz | 037000747727 |
| Old Spice Pure Sport 2021 Gift Set | 012044048535 |

23.    Less than a month later, on December 17, 2021, P&G issue a further voluntary recall of its health and beauty products due to the presence of benzene. The December 2021 recall encompassed 32 of P&G's aerosol dry conditioner and dry shampoo spray products sold under the brands Pantene, Aussie, Herbal Essences, Waterless, Old Spice, and Hair Food.

24.    With respect to its Recalled Hair Spray Products, P&G's December 17, 2021 press release explained: "Following recent reports that indicated traces of benzene in some aerosol spray products, we began a review of our total portfolio of aerosol products." P&G continued, "While benzene is not an ingredient in any of our products, our review showed that unexpected levels of benzene came from the propellant that sprays the product out of the can. We detected benzene in aerosol dry shampoo spray products and aerosol dry conditioner spray products."

25.    The Recalled Hair Spray Products in the December 2021 recall included the following:

| P&G's Recalled Hair Spray Products | UPC |
|---|---|
| Waterless Dry Conditioner Weightless Smooth, 3.6oz. | 37000543954 |
| Waterless Dry Conditioner Instant Moisture, 3.6oz. | 37000543831 |
| Waterless Dry Conditioner Weightless Smooth, .98oz. | 37000544111 |
| Waterless Dry Conditioner Instant Moisture, .98oz. | 37000544227 |
| Pantene Sultry Bronde All in One Luxury Mist, 4.9oz. | 80878188710 |
| Pantene Smooth Talker Dry Conditioning Oil, 3.9oz. | 80878192397 |
| Pantene Mist Behaving Dry Conditioning Mist, 3.9oz. | 80878190898 |
| Pantene Mist Behaving Dry Conditioning Mist, 3.9oz. | 80878188758 |

| P&G's Recalled Hair Spray Products | UPC |
|---|---|
| Pantene Mist Behaving Dry Conditioning Mist, 1.0oz. | 80878188765 |
| Pantene Gold Series Instant Nourishing Spray, 4.9oz. | 80878188987 |
| Aussie Smooth Vibes Dry Conditioner, 4.9oz. | 381519187957 |
| Aussie Petal Soft Dry Conditioner, 4.9oz. | 381519187544 |
| Aussie Sleekend Warrior Dry Conditioner, 4.9oz. | 381519187537 |
| Herbal Essences Blue Ginger Refresh Dry Shampoo, 4.9oz. | 190679001498 |
| Herbal Essences White Grapefruit & Mint Dry Shampoo, 4.9oz. | 190679000262 |
| Herbal Essences White Strawberry & Sweet Mint Dry Shampoo, 4.9oz. | 190679000255 |
| Herbal Essences Cucumber & Green Tea Dry Shampoo, 4.9oz. | 190679000248 |
| Herbal Essences Cucumber & Green Tea Dry Shampoo, 1.7oz. | 190679000330 |
| Pantene Dry Shampoo No Water Refresh, 4.9oz. | 80878177042 |
| Pantene Dry Shampoo Sheer Volume, 4.9oz. | 80878185276 |
| Pantene Never Tell Dry Shampoo, 4.2oz. | 80878188727 |
| Aussie After Hours Dry Shampoo Texture Spray, 4.9oz. | 381519187834 |
| Aussie Tousle Hustle Dry Shampoo, 4.9oz. | 381519187285 |
| Aussie Bounce Back Dry Shampoo, 4.9oz. | 381519187278 |
| Aussie Clean Color Protect Shampoo, 4.9oz. | 381519187360 |
| Aussie Clean Texture Dry Shampoo, 4.9oz. | 381519187285 |
| Aussie Clean Volume Dry Shampoo, 4.9oz. | 381519187278 |
| Waterless Dry Shampoo No Residue, 3.7oz. | 37000543787 |
| Waterless Dry Shampoo No Residue, 1oz. | 37000543978 |
| Hair Food Coconut Dry Shampoo, 4.9oz. | 37000876717 |

| P&G's Recalled Hair Spray Products | UPC |
|---|---|
| Old Spice Fiji Dry Shampoo, 4.9oz. | 37000779421 |
| Old Spice Pure Sport Dry Shampoo, 4.9oz. | 37000785170 |

26.     P&G's November 23, 2021 press release instructed that "[c]onsumers should stop using and appropriately discard the affected aerosol spray products." In its December 17, 2021 press release, P&G advised consumers of its Recalled Hair Spray Products to similarly cease usage of the contaminated products and discard them. While both recall notices directed purchasers of the Recalled Products to various of P&G's brand websites (such as www.pantene.com and www.oldspice.com) "to learn how to receive reimbursement for eligible products," any suggestion of reimbursement is either nonexistent or illusory. Information concerning the recalls is not prominent thereon but is buried within these brand websites or missing altogether. Nor do the P&G brand websites provide any information or clarity for how to obtain reimbursement or what documentation may be required. Instead, those websites merely direct affected consumers to further contact P&G via chat, email, or by phone, rendering any reimbursement process needlessly cumbersome and ineffectual. To the extent receipts or proofs of purchase are necessary for reimbursement, such a requirement should be excused because many consumers of these "small-ticket" health and beauty products are unlikely to retain this documentation following their purchases (nor would retaining such receipts be reasonable under the circumstances).

27.     As a result of the foregoing, Plaintiffs and the class members were deceived and misled by P&G's false, misleading, and deceptive misrepresentations and omissions regarding (i) the presence of the carcinogen benzene in the Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products, and (ii) these products' resulting safety, effectiveness, and fitness for ordinary usage. Due to this wrongful conduct, consumers—including Plaintiffs and members of the classes—purchased and otherwise overpaid for P&G's Recalled Products.

## CLASS ACTION ALLEGATIONS

28.     Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and

23(b)(3) on behalf of themselves and proposed classes defined as follows:

> All persons who purchased the Recalled Products in the United States (the "Nationwide Class")

29.     Within the Nationwide Class, there are four Subclasses defined as follows:

> All persons who purchased the Recalled Products in the State of Illinois (the "Illinois Class")
>
> All persons who purchased the Recalled Products in the State of Arizona (the "Arizona Class")
>
> All persons who purchased the Recalled Products in the State of California (the "California Class")
>
> All persons who purchased the Recalled Products in the State of Florida (the "Florida Class")

30.     Within the California Class, there is one subclass for purposes of Plaintiffs' claims

under the California Song-Beverly Consumer Warranty Act and the California Consumer Legal

Remedies Act. The proposed California Subclass is defined as follows:

> All persons who purchased the Recalled Products in the State of California for personal, family, or household purposes (the "California Subclass").

31.     Excluded from the Nationwide Class and Subclasses are governmental entities,

P&G, any entity in which P&G has a controlling interest, and P&G's officers, directors, affiliates,

legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also

excluded from the Nationwide Class and Subclasses are any judges, justices, or judicial officers

presiding over this matter and the members of their immediate families and judicial staff. This

action is brought and may be properly maintained as a class action pursuant to Federal Rule of

Civil Procedure 23(b)(2) and 23(b)(3), and satisfies the numerosity, commonality, typicality,

adequacy, predominance, and superiority requirements of these rules.

32.     ***Numerosity Under Rule 23(a)(1).*** The Nationwide Class and Subclasses are so

numerous that the individual joinder of all members is impracticable, and the disposition of the

claims of all members of the Nationwide Class and Subclasses in a single action will provide

substantial benefits to the parties and the Court. Although the precise number of members of the Nationwide Class and Subclasses are unknown to Plaintiffs at this time, on information and belief, the proposed Nationwide Class and Subclasses contain at least thousands of purchasers of the Recalled Products who have been damaged by P&G's conduct as alleged herein. Discovery will reveal, through P&G's records, the approximate number of members of the Nationwide Class and Subclasses.

33. ***Commonality Under Rule 23(a)(2).*** Common legal and factual questions exist that predominate over any questions affecting only individual members of the Nationwide Class and Subclasses. These common questions, which do not vary among members of the Nationwide Class or Subclasses and which may be determined without reference to any Nationwide Class or Subclass member's individual circumstances, include, but are not limited to:

(a) Whether the Recalled Products were contaminated with the carcinogen benzene;

(b) Whether P&G knew or should have known that the Recalled Products were contaminated with benzene;

(c) Whether P&G's representations and omissions in advertising and/or labeling are false, deceptive, and misleading;

(d) Whether P&G's representations and omissions in advertising and/or labeling are likely to deceive a reasonable consumer;

(e) Whether P&G had knowledge that its representations and omissions in advertising and/or labeling were false, deceptive, and misleading;

(f) Whether P&G engaged in unlawful, fraudulent, or unfair business practices;

(g) Whether P&G's conduct violated the applicable state consumer protection laws alleged herein;

(h) Whether, as a result of P&G's omissions and/or misrepresentations of material facts, Plaintiffs and members of the Nationwide Class and Subclasses have suffered an ascertainable loss of monies and/or property and/or value;

(i)     Whether Plaintiffs and the members of the Nationwide Class or Subclasses have been damaged by the wrongs alleged are entitled to actual, statutory, and punitive damages; and

(j)     Whether Plaintiffs and members of the Nationwide Class and Subclasses are entitled to declaratory and injunctive relief.

34.     ***Typicality Under Rule 23(a)(3).*** Plaintiffs' claims are typical of the Nationwide Class and Subclasses members' claims. P&G's course of conduct caused Plaintiffs and members of the Nationwide Class and Subclasses the same harm, damages, and losses as a result of P&G's uniformly unlawful conduct. Likewise, Plaintiffs and other members of the Nationwide Class and Subclasses must prove the same facts in order to establish the same claims.

35.     ***Adequacy of Representation Under Rule 23(a)(4).*** Plaintiffs are adequate Nationwide Class and Subclass representatives because they are Nationwide Class and Subclass members, and their interests do not conflict with the interests of the Nationwide Class or Subclass. Plaintiffs have retained counsel competent and experienced in complex litigation and consumer protection class action matters such as this action, and Plaintiffs and their counsel intend to vigorously prosecute this action for the Nationwide Class and Subclasses' benefit and have the resources to do so. Plaintiffs and their counsel have no interests adverse to those of the other members of the Nationwide Class or Subclasses.

36.     Further, Plaintiffs have standing to represent members of the putative classes because there is sufficient similarity between the specific products purchased by Plaintiffs and the other health and beauty products comprising the Recalled Products. More specifically, all of P&G's Recalled Products uniformly fail to include labeling to indicate to consumers that the Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products contain benzene as an active or inactive ingredient.

37.     ***Superiority.*** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because individual litigation of each Nationwide Class and Subclass member's claim is impracticable. The damages, harm, and losses suffered by the individual members of the Nationwide Class and Subclasses will likely be small relative to the

burden and expense of individual prosecution of the complex litigation necessitated by P&G's wrongful conduct. Even if each Nationwide Class and Subclass member could afford individual litigation, the Court system could not. It would be unduly burdensome if thousands of individual cases proceeded. Individual litigation also presents the potential for inconsistent or contradictory judgments, the prospect of a race to the courthouse, and the risk of an inequitable allocation of recovery among those individuals with equally meritorious claims. Individual litigation would increase the expense and delay to all parties and the Courts because it requires individual resolution of common legal and factual questions. By contrast, the class action device presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

38.     As a result of the foregoing, class treatment is appropriate.

**<u>FIRST CLAIM FOR RELIEF</u>**
**Breach of Express Warranty**
**810 Ill. Comp. Stat. § 5/2-313**
***(On Behalf of Plaintiff Casolari and the Illinois Class)***

39.     Plaintiff Casolari, individually and on behalf of the Illinois Class, incorporates by reference all the allegations contained in the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

40.     Plaintiff Casolari brings this claim individually and on behalf of the Illinois Class against P&G.

41.     P&G is and was at all relevant times a "merchant" with respect to health and beauty products under 810 Ill. Comp. Stat. § 5/2-104(1) and a "seller" of such health and beauty products under 810 Ill. Comp. Stat. § 5/2-103(1)(d).

42.     The Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products are and were at all relevant times "goods" within the meaning of 810 Ill. Comp. Stat. § 5/2-105(1).

43.     Plaintiff Casolari and each member of the Illinois Class formed a contract with P&G at the time Plaintiff Casolari and each member of the Illinois Class purchased the Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products.

44.     The terms of these contracts included the promises and affirmations of fact made by P&G on the packaging of the Recalled Products and through marketing and advertising which did not reveal the presence of the carcinogen benzene therein, as described above. Instead, P&G's written warranties with Plaintiff Casolari and the Illinois Class represented that the Recalled Products were health and beauty products which contained only those active and inactive ingredients listed on their labels. P&G further expressly warrants and represents in its marketing, advertising, and labeling of the Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products that benzene is one of the materials "we do not use as ingredients in any of our formulated products."[9] Together, this labeling, marketing, and advertising constituted express warranties that formed a basis of the bargain that was breached when Plaintiff Casolari and the Illinois Class members purchased the Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products which contained benzene and were accordingly misbranded, adulterated, and not safe or suitable for human application.

45.     Plaintiff Casolari and the Illinois Class, by use of reasonable care, could not have discovered the breached warranty and incurred the hidden increased risks and unreasonable dangers of using the Recalled Products.

46.     As a direct and proximate result of P&G's breach of express warranties, Plaintiff Casolari and the Illinois Class members have been injured and damaged in an amount to be determined at trial.

47.     Plaintiff Casolari and the Illinois Class did not need to send notice to P&G of its breaches of its express warranties because P&G was already on notice that its Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products contained benzene, in violation of P&G's express warranties as alleged herein. Additionally, P&G is already facing similar lawsuits for the conduct alleged herein.

---

[9] https://us.pg.com/ingredients/ (last visited Apr. 24, 2022).

## SECOND CLAIM FOR RELIEF
### Breach of Implied Warranty of Merchantability
### 810 Ill. Comp. Stat. § 5/2-314
### *(On Behalf of Plaintiff Casolari and the Illinois Class)*

48.     Plaintiff Casolari, individually and on behalf of the Illinois Class, incorporates by reference all the allegations contained in the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

49.     Plaintiff Casolari brings this claim individually and on behalf of the Illinois Class against P&G.

50.     P&G is and was at all relevant times a "merchant" with respect to health and beauty products under 810 Ill. Comp. Stat. § 5/2-104(1) and a "seller" of such health and beauty products under 810 Ill. Comp. Stat. § 5/2-103(1)(d).

51.     The Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products are and were at all relevant times "goods" within the meaning of 810 Ill. Comp. Stat. § 5/2-105(1).

52.     A warranty that the Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products were in merchantable condition and fit for the ordinary purpose for which these health and beauty products are used (and were not otherwise injurious to consumers) is implied by law pursuant to 810 Ill. Comp. Stat. §§ 5/2-314 and 5/2-315. The implied warranty of merchantability is part of the basis for the benefit of the bargain between P&G and Plaintiff Casolari and the Illinois Class members.

53.     The Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products were not in merchantable condition and are not fit for the ordinary purpose for which health and beauty products are used because they were contaminated with benzene, a carcinogen. P&G knew or had reason to know of the specific use for which the Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products were purchased. More specifically, at the time P&G marketed and otherwise placed its Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products into the stream of commerce, it knew that Plaintiff Casolari and the Illinois Class would purchase these products for safe use and effective hair styling and antiperspirant purposes,

expecting them to be free from dangerous carcinogens. P&G further knew that consumers, including Plaintiff Casolari and the Illinois Class, lacked the ability or opportunity to determine the ingredients in the Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products, but would instead rely on P&G's representations that the Recalled Products were suitable for their particular purpose and free from carcinogens.

54.     At all times, Plaintiff Casolari and Illinois Class members used the Recalled Products in the manner that was intended for use.

55.     P&G's implied warranties apply to the purchasers of the Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products, creating privity between P&G and Plaintiff Casolari and Illinois Class members. Further, as intended consumers and ultimate users of the Recalled Products, Plaintiffs Casolari and Illinois Class members are the intended third-party beneficiaries of any contracts between P&G and retailers for whom Plaintiff Casolari and Illinois Class members obtained the Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products, which contained the implied warranty of merchantability and fitness for ordinary use. Plaintiff Casolari and the Illinois Class members are the parties intended to benefit from any such contract because they are the persons using the Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products in the manner intended.

56.     As a direct and proximate result of P&G's breach of the implied warranty of merchantability, Plaintiff Casolari and the Illinois Class members have been injured and damaged in an amount to be proven at trial.

57.     Plaintiff Casolari and the Illinois Class did not need to send notice to P&G of its breaches of its implied warranty of merchantability because P&G was already on notice that its Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products contained benzene, thereby violating P&G's implied warranties as alleged herein. Additionally, P&G is already facing similar lawsuits for the conduct alleged herein.

**THIRD CLAIM FOR RELIEF**
**Violations of Illinois Consumer Fraud and Deceptive Business Practices Act**
**815 Ill. Comp. Stat. §§ 505/1, *et seq*.**
***(On Behalf of Plaintiff Casolari and the Illinois Class)***

58.     Plaintiff Casolari, individually and on behalf of the Illinois Class, incorporates by reference all the allegations contained in the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

59.     Plaintiff Casolari brings this claim individually and on behalf of the Illinois Class against P&G.

60.     P&G is a "person" as that term is defined in 815 Ill. Comp. Stat. § 505/1(c).

61.     Plaintiff Casolari and the Illinois Class members are "consumers" as that term is defined in 815 Ill. Comp. Stat. § 505/1(e).

62.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including, but not limited to, the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact ... in the conduct of trade or commerce ... whether any person has in fact been misled, deceived or damaged thereby." 815 Ill. Comp. Stat. § 505/2.

63.     Plaintiff Casolari and the Illinois Class purchased Recalled Products new and in their original packaging and did not alter the Recalled Products.

64.     In the course of its business, P&G concealed that the Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products contained the carcinogen benzene and otherwise engaged in activities with a tendency or capacity to deceive. P&G also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products. P&G's deceptive acts or practices were

likely to, and did in fact, deceive reasonable consumers about the safety of the Recalled Products and their ingredients. Plaintiff Casolari and the Illinois Class reasonably understood P&G's representations and omissions to mean that the Recalled Products were safe and fit for human application.

65.     P&G knew that its Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products were contaminated with benzene at the time of sale and acquired additional information thereon after the Recalled Products were sold, but concealed all of that information until it was revealed by Valisure. By failing to disclose and by actively concealing this information concerning its Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products, P&G engaged in unfair and deceptive business practices in violation of the Illinois CFA.

66.     As alleged above, P&G made material statements about the safety of the Recalled Products that were either false or misleading. P&G owed Plaintiff Casolari and the Illinois Class a duty to disclose the true safety of the Recalled Products because P&G: (i) possessed exclusive knowledge about the presence of benzene in its Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products; (ii) intentionally concealed the foregoing from Plaintiff Casolari and the Illinois Class; and (iii) made incomplete representations about the safety of the Recalled Products, while purposefully withholding material facts from Plaintiff Casolari and the Illinois that contradicted these representations.

67.     P&G intentionally and knowingly misrepresented material facts regarding the Recalled Products with the intent to mislead Plaintiff Casolari and the Illinois Class. P&G knew or should have known that its conduct violated the Illinois CFA.

68.     As a direct and proximate result of P&G's unfair and deceptive conduct, Plaintiff Casolari and the Illinois Class members have suffered injury, ascertainable losses of money or property, and monetary and nonmonetary damages. Because P&G fraudulently concealed the dangerously high levels of benzene in the Recalled Products, purchasers of the Recalled Products were deprived of the benefit of their bargain since the health and beauty products they purchased were worth less than they would have been if they were free from benzene. Had purchasers of the

Recalled Products been aware of the high levels of benzene, they would have either not bought them or would have paid less for them.

69.     P&G's violations caused ascertainable injury to Plaintiff Casolari and the Illinois Class, as well as to the general public. P&G's unlawful acts and practices alleged herein negatively affect the public interest, and there are no countervailing benefits to consumers that outweigh the harm caused by P&G's conduct.

70.     Pursuant to 815 Ill. Comp. Stat. § 505/10a(a), Plaintiff Casolari and the Illinois Class seek monetary relief against P&G in the amount of actual damages, as well as punitive damages because P&G acted with fraud and/or malice and/or was grossly negligent.

71.     Plaintiff Casolari and the Illinois Class also seek an order enjoining P&G's unfair and/or deceptive acts or practices under 815 Ill. Comp. Stat. § 505/7, punitive damages, and attorneys' fees, and any other just and proper relief available under 815 Ill. Comp. Stat. §§ 505/1 *et seq*. the Court deems necessary to protect the public from further violations of the Illinois CFA.

### FOURTH CLAIM FOR RELIEF
**Breach of Express Warranty**
**Ariz. Rev. Stat. § 47-2313**
***(On Behalf of Plaintiff Lewis and the Arizona Class)***

72.     Plaintiff Lewis, individually and on behalf of the Arizona Class, incorporates by reference all the allegations contained in the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

73.     Plaintiff Lewis brings this claim individually and on behalf of the Arizona Class against P&G.

74.     P&G is and was at all relevant times a "merchant" with respect to health and beauty products under Ariz. Rev. Stat. § 47-2104(A) and a "seller" of such health and beauty products under Ariz. Rev. Stat. § 47-2103(A)(4).

75.     The Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products are and were at all relevant times "goods" within the meaning of Ariz. Rev. Stat. § 47-2105(A).

76. Plaintiff Lewis and each member of the Arizona Class formed a contract with P&G at the time Plaintiff Lewis and each member of the Arizona Class purchased the Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products.

77. The terms of these contracts included the promises and affirmations of fact made by P&G on the packaging of the Recalled Products and through marketing and advertising which did not reveal the presence of the carcinogen benzene therein, as described above. Instead, P&G's written warranties with Plaintiff Lewis and the Arizona Class represented that the Recalled Products were health and beauty products which contained only those active and inactive ingredients listed on their labels. P&G further expressly warrants and represents in its marketing, advertising, and labeling of the Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products that benzene is one of the materials "we do not use as ingredients in any of our formulated products."[10] Together, this labeling, marketing, and advertising constituted express warranties that formed a basis of the bargain that was breached when Plaintiff Lewis and the Arizona Class members purchased the Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products which contained benzene and were accordingly misbranded, adulterated, and not safe or suitable for human application.

78. Plaintiff Lewis and the Arizona Class, by use of reasonable care, could not have discovered the breached warranty and incurred the hidden increased risks and unreasonable dangers of using the Recalled Products.

79. As a direct and proximate result of P&G's breach of express warranties, Plaintiff Lewis and the Arizona Class members have been injured and damaged in an amount to be determined at trial.

80. Plaintiff Lewis and the Arizona Class did not need to send notice to P&G of its breaches of its express warranties because P&G was already on notice that its Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products contained benzene, in violation of P&G's

---

[10] https://us.pg.com/ingredients/ (last visited Apr. 24, 2022).

express warranties as alleged herein. Additionally, P&G is already facing similar lawsuits for the conduct alleged herein.

### FIFTH CLAIM FOR RELIEF
**Breach of Implied Warranty of Merchantability**
**Ariz. Rev. Stat. § 47-2314**
***(On Behalf of Plaintiff Lewis and the Arizona Class)***

81.     Plaintiff Lewis, individually and on behalf of the Arizona Class, incorporates by reference all the allegations contained in the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

82.     Plaintiff Lewis brings this claim individually and on behalf of the Arizona Class against P&G.

83.     P&G is and was at all relevant times a "merchant" with respect to health and beauty products under Ariz. Rev. Stat. § 47-2104(A) and a "seller" of such health and beauty products under Ariz. Rev. Stat. § 47-2103(A)(4).

84.     The Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products are and were at all relevant times "goods" within the meaning of Ariz. Rev. Stat. § 47-2105(A).

85.     A warranty that the Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products were in merchantable condition and fit for the ordinary purpose for which these health and beauty products are used (and were not otherwise injurious to consumers) is implied by law pursuant to Ariz. Rev. Stat. §§ 47-2314 and 47-2315. The implied warranty of merchantability is part of the basis for the benefit of the bargain between P&G and Plaintiff Lewis and the Arizona Class members.

86.     The Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products were not in merchantable condition and are not fit for the ordinary purpose for which health and beauty products are used because they were contaminated with benzene, a carcinogen. P&G knew or had reason to know of the specific use for which the Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products were purchased. More specifically, at the time P&G marketed and otherwise placed its Recalled Hair Spray Products and Recalled Aerosol Antiperspirant

Products into the stream of commerce, it knew that Plaintiff Lewis and the Arizona Class would purchase these products for safe use and effective hair styling and antiperspirant purposes, expecting them to be free from dangerous carcinogens. P&G further knew that consumers, including Plaintiff Lewis and the Arizona Class, lacked the ability or opportunity to determine the ingredients in the Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products, but would instead rely on P&G's representations that the Recalled Products were suitable for their particular purpose and free from carcinogens.

87.     At all times, Plaintiff Lewis and Arizona Class members used the Recalled Products in the manner that was intended for use.

88.     P&G's implied warranties apply to the purchasers of the Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products, creating privity between P&G and Plaintiff Lewis and Arizona Class members. Further, as intended consumers and ultimate users of the Recalled Products, Plaintiff Lewis and Arizona Class members are the intended third-party beneficiaries of any contracts between P&G and retailers for whom Plaintiff Lewis and Arizona Class members obtained the Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products, which contained the implied warranty of merchantability and fitness for ordinary use. Plaintiff Lewis and the Arizona Class members are the parties intended to benefit from any such contract because they are the persons using the Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products in the manner intended.

89.     As a direct and proximate result of P&G's breach of the implied warranty of merchantability, Plaintiff Lewis and the Arizona Class members have been injured and damaged in an amount to be proven at trial.

90.     Plaintiff Lewis and the Arizona Class did not need to send notice to P&G of its breaches of its implied warranty of merchantability because P&G was already on notice that its Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products contained benzene, thereby violating P&G's implied warranties as alleged herein. Additionally, P&G is already facing similar lawsuits for the conduct alleged herein.

**SIXTH CLAIM FOR RELIEF**
**Violations of the Arizona Consumer Fraud Act**
**Ariz. Rev. Stat. §§ 44-1521,** *et seq.*
*(On Behalf of Plaintiff Lewis and the Arizona Class)*

91. Plaintiff Lewis, individually and on behalf of the Arizona Class, incorporates by reference all the allegations contained in the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

92. Plaintiff Lewis brings this claim individually and on behalf of the Arizona Class against P&G.

93. P&G, Plaintiff Lewis, and members of the Arizona Class are "persons" within the meaning of the Arizona Consumer Fraud Act ("Ariz. CFA"). Ariz. Rev. Stat. § 44-1521(6).

94. The Recalled Products are "merchandise" within the meaning of Ariz. Rev. Stat. § 44-1521(5).

95. The Ariz. CFA prohibits "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud . . . misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale . . . of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby." Ariz. Rev. Stat. § 44-1522(A).

96. Plaintiff Lewis and the Arizona Class purchased Recalled Products new and in their original packaging and did not alter the Recalled Products.

97. In the course of its business, P&G concealed that the Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products contained the carcinogen benzene and otherwise engaged in activities with a tendency or capacity to deceive. P&G also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products. P&G's deceptive acts or practices were likely to, and did in fact, deceive reasonable consumers about the safety of the Recalled Products

25

and their ingredients. Plaintiff Lewis and the Arizona Class reasonably understood P&G's representations and omissions to mean that the Recalled Products were safe and fit for human application.

98. P&G's acts and practices are also unfair because they are contrary to Arizona law and public policy and further constitute immoral, unethical, oppressive, and unscrupulous business practices that caused substantial injury to Plaintiff Lewis, as well as to members of the Arizona Class. The harm caused by P&G's unfair acts and practices outweighs any utility of such conduct.

99. As alleged above, P&G made material statements about the safety of the Recalled Products that were either false or misleading. P&G owed Plaintiff Lewis and the Arizona Class a duty to disclose the true safety of the Recalled Products because P&G: (i) possessed exclusive knowledge about the presence of benzene in its Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products; (ii) intentionally concealed the foregoing from Plaintiff Lewis and the Arizona Class; and (iii) made incomplete representations about the safety of the Recalled Products, while purposefully withholding material facts from Plaintiff Lewis and the Arizona that contradicted these representations.

100. P&G intentionally and knowingly misrepresented material facts regarding the Recalled Products with the intent to mislead Plaintiff Lewis and the Arizona Class. P&G knew or should have known that its conduct violated the Ariz. CFA.

101. As a direct and proximate result of P&G's violations of the Ariz. CFA, Plaintiff Lewis and the Arizona Class have suffered injury-in-fact and/or actual damage. Plaintiff Lewis and the Arizona Class seek monetary relief against P&G in an amount to be determined at trial. Plaintiff Lewis also seeks an order enjoining P&G from unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Ariz. CFA.

**SEVENTH CLAIM FOR RELIEF**
**Breach of Express Warranty**
**Cal. Com. Code § 2313**
***(On Behalf of Plaintiffs Bernier and Theus and the California Class)***

102.     Plaintiffs Bernier and Theus, individually and on behalf of the California Class, incorporate by reference all the allegations contained in the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

103.     Plaintiffs Bernier and Theus bring this claim individually and on behalf of the California Class against P&G.

104.     P&G is and was at all relevant times a "merchant" with respect to health and beauty products under Cal. Com. Code § 2104(1) and a "seller" of such health and beauty products under Cal. Com. Code § 2103(1).

105.     The Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products are and were at all relevant times "goods" within the meaning of Cal. Com. Code § 2105(1).

106.     Plaintiffs Bernier and Theus and each member of the California Class formed a contract with P&G at the time Plaintiff Bernier and Theus and each member of the California Class purchased the Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products.

107.     The terms of these contracts included the promises and affirmations of fact made by P&G on the packaging of the Recalled Products and through marketing and advertising which did not reveal the presence of the carcinogen benzene therein, as described above. Instead, P&G's written warranties with Plaintiffs Bernier and Theus and the California Class represented that the Recalled Products were health and beauty products which contained only those active and inactive ingredients listed on their labels. P&G further expressly warrants and represents in its marketing, advertising, and labeling of the Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products that benzene is one of the materials "we do not use as ingredients in any of our formulated products."[11] Together, this labeling, marketing, and advertising constituted express warranties that formed a basis of the bargain that was breached when Plaintiffs Bernier and Theus and the

---

[11] https://us.pg.com/ingredients/ (last visited Apr. 24, 2022).

California Class members purchased the Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products which contained benzene and were accordingly misbranded, adulterated, and not safe or suitable for human application.

108.     Plaintiffs Bernier and Theus and the California Class, by use of reasonable care, could not have discovered the breached warranty and incurred the hidden increased risks and unreasonable dangers of using the Recalled Products.

109.     As a direct and proximate result of P&G's breach of express warranties, Plaintiffs Bernier and Theus and the California Class members have been injured and damaged in an amount to be determined at trial.

110.     Plaintiffs Bernier and Theus and the California Class did not need to send notice to P&G of its breaches of its express warranties because P&G was already on notice that its Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products contained benzene, in violation of P&G's express warranties as alleged herein. Additionally, P&G is already facing similar lawsuits for the conduct alleged herein.

## EIGHTH CLAIM FOR RELIEF
### Breach of Implied Warranty of Merchantability
### Cal. Com. Code § 2314
### *(On Behalf of Plaintiffs Bernier and Theus and the California Class)*

111.     Plaintiffs Bernier and Theus, individually and on behalf of the California Class, incorporate by reference all the allegations contained in the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

112.     Plaintiffs Bernier and Theus bring this claim individually and on behalf of the California Class against P&G.

113.     P&G is and was at all relevant times a "merchant" with respect to health and beauty products under Cal. Com. Code § 2104(1) and a "seller" of such health and beauty products under Cal. Com. Code § 2103(1).

114.     The Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products are and were at all relevant times "goods" within the meaning of Cal. Com. Code § 2105(1).

115. A warranty that the Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products were in merchantable condition and fit for the ordinary purpose for which these health and beauty products are used (and were not otherwise injurious to consumers) is implied by law pursuant to Cal. Com. Code §§ 2314 and 2315. The implied warranty of merchantability is part of the basis for the benefit of the bargain between P&G and Plaintiffs Bernier and Theus and the California Class members.

116. The Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products were not in merchantable condition and are not fit for the ordinary purpose for which health and beauty products are used because they were contaminated with benzene, a carcinogen. P&G knew or had reason to know of the specific use for which the Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products were purchased. More specifically, at the time P&G marketed and otherwise placed its Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products into the stream of commerce, it knew that Plaintiffs Bernier and Theus and the California Class would purchase these products for safe use and effective hair styling and antiperspirant purposes, expecting them to be free from dangerous carcinogens. P&G further knew that consumers, including Plaintiffs Bernier and Theus and the California Class, lacked the ability or opportunity to determine the ingredients in the Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products, but would instead rely on P&G's representations that the Recalled Products were suitable for their particular purpose and free from carcinogens.

117. At all times, Plaintiffs Bernier and Theus and California Class members used the Recalled Products in the manner that was intended for use.

118. P&G's implied warranties apply to the purchasers of the Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products, creating privity between P&G and Plaintiffs Bernier and Theus and California Class members. Further, as intended consumers and ultimate users of the Recalled Products, Plaintiffs Bernier and Theus and California Class members are the intended third-party beneficiaries of any contracts between P&G and retailers for whom Plaintiffs Bernier and Theus and California Class members obtained the Recalled Hair Spray

Products and Recalled Aerosol Antiperspirant Products, which contained the implied warranty of merchantability and fitness for ordinary use. Plaintiffs Bernier and Theus and the California Class members are the parties intended to benefit from any such contract because they are the persons using the Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products in the manner intended.

119.    As a direct and proximate result of P&G's breach of the implied warranty of merchantability, Plaintiffs Bernier and Theus and the California Class members have been injured and damaged in an amount to be proven at trial.

120.    Plaintiffs Bernier and Theus and the California Class did not need to send notice to P&G of its breaches of its implied warranty of merchantability because P&G was already on notice that its Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products contained benzene, thereby violating P&G's implied warranties as alleged herein. Additionally, P&G is already facing similar lawsuits for the conduct alleged herein.

**NINTH CLAIM FOR RELIEF**
**Violations of Song-Berly Consumer Warranty Act**
**Cal. Civ. Code §§ 1790, *et seq.***
***(On Behalf of Plaintiffs Bernier and Theus and the California Subclass)***

121.    Plaintiffs Bernier and Theus, individually and on behalf of the California Subclass, incorporate by reference all the allegations contained in the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

122.    Plaintiffs Bernier and Theus bring this claim individually and on behalf of the California Subclass against P&G.

123.    Plaintiffs Bernier and Theus and the California Subclass purchased Recalled Products marketed by P&G as safe and appropriate for human application.

124.    Plaintiffs Bernier and Theus and the California Subclass purchased the Recalled Products new and in their original packaging and did not alter the Recalled Products.

125.    The Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products were used and bought primarily for personal, family, or household purposes and are therefore consumer goods.

126.    At the time of Plaintiffs Bernier and Theus and the California Subclass's purchases, P&G was in the business of marketing health and beauty products, including the Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products.

127.    P&G's Recalled Products were contaminated with benzene. Benzene was present in the Recalled Products when they left the exclusive control of P&G and therefore existed during the duration of the warranty period.

128.    P&G's Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products were not of the same quality as those generally acceptable in the trade; were not safe, effective, or fit for the ordinary purpose of human application; were not adequately contained, packaged, and labeled; and did not conform to the promises and facts stated on their containers and labels.

129.    P&G therefore breached the implied warranty of merchantability, which by California law is provided in every consumer agreement for the sale of goods, including the sale of the Recalled Products.

130.    As a direct and proximate cause of P&G's breach of the implied warranty of merchantability, Plaintiffs Bernier and Theus and the California Subclass have been damaged by receiving an inferior and unsafe product from that which they were promised. Plaintiffs Bernier and Theus and the California Subclass, therefore, have the right to cancel and recover the purchase price of their Recalled Products.

### ELEVENTH CLAIM FOR RELIEF
**Violations of the California False Advertising Law**
**Cal. Bus. & Prof. Code §§ 17500,** *et seq.*
*(On Behalf of Plaintiffs Bernier and Theus and the California Class)*

131.    Plaintiffs Bernier and Theus, individually and on behalf of the California Class, incorporate by reference all the allegations contained in the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

132.    Plaintiffs Bernier and Theus bring this claim individually and on behalf of the California Class against P&G.

133.    California's False Advertising Law prohibits any statement in connection with the sale of goods "which is untrue or misleading." Cal. Bus. & Prof. Code § 17500.

134.    Plaintiffs Bernier and Theus, individually and on behalf of the California Class, have standing to pursue this claim because they suffered injury in fact and have lost money or property as a result of P&G's actions, as described above.

135.    P&G engaged in advertising and marketing to the public and offered for sale the Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products in California.

136.    P&G engaged in the advertising and marketing alleged herein with the intent to induce the sale of the Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products to consumers like Plaintiffs Bernier and Theus and the California Class.

137.    P&G's advertising and marketing representations regarding its Recalled Products were false, misleading, and deceptive as set forth in detail above, within the definition, meaning, and construction of California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* P&G concealed the material information from consumers that these health and beauty products contained a known carcinogen, benzene.

138.    P&G's misrepresentations and omissions alleged herein deceive or have the tendency to deceive the general public regarding safety and effectiveness of the Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products for ordinary consumer use.

139.    P&G's misrepresentations and omissions alleged herein were the type of misrepresentations that are material (*i.e.*, a reasonable person would attach importance to them and would be induced to act on the information in making purchase decisions).

140.    P&G's misrepresentations and omissions alleged herein are objectively material to a reasonable consumer, and therefore reliance upon such misrepresentations may be presumed as a matter of law.

141.    At the time P&G made the misrepresentations and omissions alleged herein, it knew or should have known that they were untrue or misleading and acted in violation of Cal. Bus. & Prof. Code §§ 17500, *et seq.*

142.    Unless restrained by this Court, P&G will continue to engage in untrue and misleading advertising in violation of Cal. Bus. & Prof. Code §§ 17500, *et seq.*

143.    As a result, Plaintiffs Bernier and Theus and each member of the California Class have been injured, have lost money or property, and are entitled to relief. Plaintiffs Bernier and Theus and the California Class seek restitution, injunctive relief, and all other relief permitted under Cal. Bus. & Prof. Code §§ 17500, *et seq.*

**TWELFTH CLAIM FOR RELIEF**
**Violations of the California Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
***(On Behalf of Plaintiffs Bernier and Theus and the California Class)***

144.    Plaintiffs Bernier and Theus, individually and on behalf of the California Class, incorporate by reference all the allegations contained in the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

145.    Plaintiffs Bernier and Theus bring this claim individually and on behalf of the California Class against P&G.

146.    Plaintiffs Bernier and Theus have standing to pursue this claim because they have suffered injury in fact and have lost money or property as a result of P&G's actions, as described above. All California Class Members overpaid for the Recalled Products due to P&G's concealment that its Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products contained the carcinogen benzene. P&G's actions as alleged herein constitute an "unlawful" practice as encompassed by Cal. Bus. & Prof. Code §§ 17200, *et seq.* (the "UCL") because P&G breached the implied warranty of merchantability in violation of the California Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790, *et seq.*, and further violated the California Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*, and the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*

33

147.    P&G's actions as alleged herein constitute a "fraudulent" practice because, by representing that the Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products were safe, effective, did not contain benzene, and suitable for ordinary consumer use but concealing that these health and beauty products in fact contained benzene, P&G's conduct was likely to deceive consumers. P&G's failure to disclose that these products contained benzene, especially in light of its claims that benzene was not contained therein, constitute material omissions in violation of the UCL.

148.    P&G's actions as alleged herein constitute an "unfair" practice because they offend established public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to P&G's customers. The harm caused by P&G's wrongful conduct outweighs any utility of such conduct and has caused—and will continue to cause—substantial injury to Plaintiffs Bernier and Theus and the California Class. P&G could and should have chosen one of many reasonably available alternatives, such as: (i) not including harmful amounts of benzene in the Recalled Products; (ii) altering the marketing, packaging, and labeling of the Recalled Products to accurately disclose the products' ingredients; or (iii) not selling its Recalled Products altogether. Additionally, P&G's conduct was "unfair," because it violated the legislatively declared policies reflected by California's strong consumer protection, consumer warranty, and false advertising laws, including the California Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790, *et seq.*, the California Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*, and the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*

149.    As a result of P&G's unlawful, fraudulent, and unfair conduct, Plaintiffs Bernier and Theus and the California Class were damaged. Plaintiffs Bernier and Theus and the California Class received an inferior product from that which they were promised. Had P&G disclosed that its Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products, Plaintiffs Bernier and Theus and the California Class would not have purchased these health and beauty products or would have paid substantially less.

150.    Plaintiffs Bernier and Theus and the California Class also seek an order requiring P&G to make full restitution of all monies they have wrongfully obtained from California Class Members, as well as all other relief permitted under the UCL.

**THIRTEENTH CLAIM FOR RELIEF**
**Violations of Consumer Legal Remedies Act**
**Cal. Civ. Code §§ 1750, *et seq.***
***(On Behalf of Plaintiffs Bernier and Theus and the California Subclass)***

151.    Plaintiffs Bernier and Theus, individually and on behalf of the California Subclass, incorporate by reference all the allegations contained in the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

152.    Plaintiffs Bernier and Theus bring this claim individually and on behalf of the California Subclass against P&G.

153.    Plaintiffs Bernier and Theus and each proposed California Subclass member is a "consumer," as that term is defined in Cal. Civ. Code § 1761(d).

154.    The Recalled Products are "goods," as that term is defined in Cal. Civ. Code § 1761(a).

155.    P&G is a "person" as that term is defined in Cal. Civ. Code § 1761(c).

156.    Plaintiffs Bernier and Theus and each proposed California Subclass member's purchase of P&G's Recalled Products constituted a "transaction," as that term is defined in Cal. Civ. Code §§ 1761(e) and 1770.

157.    P&G's conduct alleged herein violates the following provisions of California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* (the "CLRA"):

a.    Representing that goods have characteristics, uses, and benefits which they do not have (Cal. Civ. Code § 1770(a)(5));

b.    Representing that goods are of a particular standard, quality, or grade, if they are of another (Cal. Civ. Code § 1770(a)(7));

c.    Advertising goods with intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9)); and

35

        d.      Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not (Cal. Civ. Code § 1770(a)(16)).

158.    In addition, under California law, a duty to disclose arises in four circumstances: (i) when the defendant is in a fiduciary relationship with the plaintiff; (ii) when the defendant has exclusive knowledge of material facts not known to the plaintiff; (iii) when the defendant actively conceals a material fact from the plaintiff; and (iv) when the defendant makes partial representations but also suppresses some material facts.

159.    P&G had a duty to disclose to Plaintiffs Bernier and Theus and the California Subclass that the Recalled Products contained the carcinogen benzene for the following three independent reasons: (i) P&G had exclusive knowledge of the information at the time of sale; (ii) P&G actively concealed from Plaintiffs Bernier and Theus and the California Subclass this information which is important to customers; and (iii) P&G made partial representations to Plaintiffs Bernier and Theus and the California Subclass regarding the safety, quality, and ingredients of the Recalled Products.

160.    P&G's misrepresentations and omissions alleged herein were likely to mislead an ordinary consumer. Plaintiffs Bernier and Theus and the California Subclass reasonably understood P&G's representations and omissions to mean that the Recalled Products were safe, effective, and fit for human application.

161.    P&G's misrepresentations and omissions alleged herein were material in that a reasonable person would attach importance to the information and would be induced to act upon the information in making purchase decisions.

162.    Plaintiffs Bernier and Theus and members of the California Subclass relied to their detriment on P&G's misrepresentations and omissions in purchasing the Recalled Products.

163.    Plaintiffs Bernier and Theus, on behalf of themselves and the California Subclass, demand judgment against P&G under the CLRA for injunctive relief to Plaintiffs Bernier and Theus and the California Subclass.

164.     Plaintiffs Bernier and Theus, on behalf of themselves and the California Subclass, further intend to seek compensatory damages.

165.     Pursuant to Cal. Civ. Code § 1782(a), Plaintiffs Bernier and Theus will serve P&G with notice of its alleged violations of the CLRA by certified mail return receipt requested. If, within thirty days after the date of such notification, P&G fails to provide appropriate relief for its violations of the CLRA, Plaintiffs Bernier and Theus will amend this Class Action Complaint to seek monetary damages under the CLRA.

166.     Notwithstanding any other statements in this Class Action Complaint, Plaintiffs Bernier and Theus do not seek monetary damages in connection with their CLRA claims—and will not do so—until the applicable thirty-day period has passed.

167.     Plaintiffs Bernier and Theus, on behalf of themselves and the California Subclass, further seek an order enjoining P&G's unfair or deceptive acts or practices, restitution, costs of court, attorneys' fees under Cal. Civ. Code § 1780(e), and any other just and proper relief available under the CLRA.

<u>FOURTEENTH CLAIM FOR RELIEF</u>
**Breach of Express Warranty**
**Fla. Stat. § 672.313**
*(On Behalf of Plaintiff Trent and the Florida Class)*

168.     Plaintiff Trent, individually and on behalf of the Florida Class, incorporates by reference all the allegations contained in the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

169.     Plaintiff Trent brings this claim individually and on behalf of the Florida Class against P&G.

170.     P&G is and was at all relevant times a "merchant" with respect to health and beauty products under Fla. Stat. § 672.104(1) and a "seller" of such health and beauty products under Fla. Stat. § 672.103(1)(d).

171.     The Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products are and were at all relevant times "goods" within the meaning of Fla. Stat. § 672.105(1).

172.    Plaintiff Trent and each member of the Florida Class formed a contract with P&G at the time Plaintiff Trent and each member of the Florida Class purchased the Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products.

173.    The terms of these contracts included the promises and affirmations of fact made by P&G on the packaging of the Recalled Products and through marketing and advertising which did not reveal the presence of the carcinogen benzene therein, as described above. Instead, P&G's written warranties with Plaintiff Trent and the Florida Class represented that the Recalled Products were health and beauty products which contained only those active and inactive ingredients listed on their labels. P&G further expressly warrants and represents in its marketing, advertising, and labeling of the Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products that benzene is one of the materials "we do not use as ingredients in any of our formulated products."[12] Together, this labeling, marketing, and advertising constituted express warranties that formed a basis of the bargain that was breached when Plaintiff Trent and the Florida Class members purchased the Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products which contained benzene and were accordingly misbranded, adulterated, and not safe or suitable for human application.

174.    Plaintiff Trent and the Florida Class, by use of reasonable care, could not have discovered the breached warranty and incurred the hidden increased risks and unreasonable dangers of using the Recalled Products.

175.    As a direct and proximate result of P&G's breach of express warranties, Plaintiff Trent and the Florida Class members have been injured and damaged in an amount to be determined at trial.

176.    Plaintiff Trent and the Florida Class did not need to send notice to P&G of its breaches of its express warranties because P&G was already on notice that its Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products contained benzene, in violation of P&G's

---

[12] https://us.pg.com/ingredients/ (last visited Apr. 24, 2022).

express warranties as alleged herein. Additionally, P&G is already facing similar lawsuits for the conduct alleged herein.

**FIFTHTEENTH CLAIM FOR RELIEF**
**Breach of Implied Warranty of Merchantability**
**Fla. Stat. § 672.314**
***(On Behalf of Plaintiff Trent and the Florida Class)***

177.    Plaintiff Trent, individually and on behalf of the Florida Class, incorporates by reference all the allegations contained in the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

178.    Plaintiff Trent brings this claim individually and on behalf of the Florida Class against P&G.

179.    P&G is and was at all relevant times a "merchant" with respect to health and beauty products under Fla. Stat. § 672.104(1) and a "seller" of such health and beauty products under Fla. Stat. § 672.103(1)(d).

180.    The Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products are and were at all relevant times "goods" within the meaning of Fla. Stat. § 672.105(1).

181.    A warranty that the Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products were in merchantable condition and fit for the ordinary purpose for which these health and beauty products are used (and were not otherwise injurious to consumers) is implied by law pursuant to Fla. Stat. §§ 672.314 and 672.315. The implied warranty of merchantability is part of the basis for the benefit of the bargain between P&G and Plaintiff Trent and the Florida Class members.

182.    The Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products were not in merchantable condition and are not fit for the ordinary purpose for which health and beauty products are used because they were contaminated with benzene, a carcinogen. P&G knew or had reason to know of the specific use for which the Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products were purchased. More specifically, at the time P&G marketed and otherwise placed its Recalled Hair Spray Products and Recalled Aerosol Antiperspirant

Products into the stream of commerce, it knew that Plaintiff Trent and the Florida Class would purchase these products for safe use and effective hair styling and antiperspirant purposes, expecting them to be free from dangerous carcinogens. P&G further knew that consumers, including Plaintiff Trent and the Florida Class, lacked the ability or opportunity to determine the ingredients in the Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products, but would instead rely on P&G's representations that the Recalled Products were suitable for their particular purpose and free from carcinogens.

183.    At all times, Plaintiff Trent and Florida Class members used the Recalled Products in the manner that was intended for use.

184.    P&G's implied warranties apply to the purchasers of the Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products, creating privity between P&G and Plaintiff Trent and Florida Class members. Further, as intended consumers and ultimate users of the Recalled Products, Plaintiffs Trent and Florida Class members are the intended third-party beneficiaries of any contracts between P&G and retailers for whom Plaintiff Trent and Florida Class members obtained the Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products, which contained the implied warranty of merchantability and fitness for ordinary use. Plaintiff Trent and the Florida Class members are the parties intended to benefit from any such contract because they are the persons using the Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products in the manner intended.

185.    As a direct and proximate result of P&G's breach of the implied warranty of merchantability, Plaintiff Trent and the Florida Class members have been injured and damaged in an amount to be proven at trial.

186.    Plaintiff Trent and the Florida Class did not need to send notice to P&G of its breaches of its implied warranty of merchantability because P&G was already on notice that its Recalled Hair Spray Products and Recalled Aerosol Antiperspirant Products contained benzene, thereby violating P&G's implied warranties as alleged herein. Additionally, P&G is already facing similar lawsuits for the conduct alleged herein.

<u>**SIXTEENTH CLAIM FOR RELIEF**</u>
**Violations of the Florida Deceptive and Unfair Trade Practices Act**
**Fla. Stat. §§ 501.201, *et seq.***
***(On Behalf of Plaintiff Trent and the Florida Class)***

187.    Plaintiff Trent, individually and on behalf of the Florida Class, incorporates by reference all the allegations contained in the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

188.    Plaintiff Trent brings this claim individually and on behalf of the Florida Class against P&G.

189.    Plaintiff Trent and members of the Florida Class are "consumers" within the definition, meaning, and construction of Fla. Stat. § 501.203(7).

190.    P&G solicited, advertised, offered, provided, and distributed goods (including the Recalled Products) in Florida and thus engaged in "trade or commerce" within the definition, meaning, and construction of Fla. Stat. § 501.203(8).

191.    The stated purpose of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") is "[t]o protect the consuming public...from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

192.    The FDUTPA broadly prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

193.    Plaintiff Trent and the Florida Class have standing to pursue this claim because Plaintiff Trent and members of the Florida Class have suffered injury in fact and have lost ascertainable money or property as a result of P&G's actions set forth above which occurred within, and emanated from, Florida.

194.    P&G's actions and conduct as alleged herein constitute an "unfair or deceptive act" within the definition, meaning, and construction of the FDUTPA because P&G violated FDCA

sections 301, 402, and 403 (21 U.S.C. §§ 331, 342, 343) and Florida's misleading advertising statute (Fla. Stat. § 817.41).

195.    P&G's actions and conduct as alleged herein further constitute an "unfair" act or practice within the definition, meaning, and construction of the FDUTPA because they offend established public policy and/or are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to its customers. P&G's unfair and deceptive practices regarding the marketing, advertising, packaging, labeling, and sale of its Recalled Products are likely to mislead—and have misled—consumers acting reasonably under the circumstances. The harm caused by P&G's wrongful conduct outweighs any utility of such conduct and has caused—and will continue to cause—substantial injury to Plaintiff Trent and the Florida Class. P&G could and should have chosen one of many reasonably available alternatives, such as: (i) not including harmful amounts of benzene in the Recalled Products; (ii) altering the marketing, packaging and labeling of the Recalled Products to accurately disclose the products' ingredients; or (iii) not selling its Recalled Products altogether.

196.    P&G's actions and conduct as alleged herein constitute a "deceptive" act or practice within the definition, meaning, and construction of the FDUTPA because P&G: (i) knowingly and willfully failed to disclose all material information to purchasers of the Recalled Products; (ii) knowingly made false representations of fact in connection with the Recalled Products; (iii) affirmatively concealed and omitted that the Recalled Products included benzene to induce reliance by Plaintiff Trent and the Florida Class; and (iv) charged premium prices for such products. P&G's conduct was likely to deceive consumers. Plaintiff Trent and the Florida Class relied on P&G's representations and omissions. P&G's failure to disclose this pertinent information regarding the true nature, specifications, and characteristics of the Recalled Products constitutes a material omission, in violation of the FDUTPA.

197.    As a direct and proximate result of P&G's "unfair" or "deceptive" conduct Plaintiff Trent and the Florida Class were induced to pay premium prices for the Recalled Products, which were worth substantially less than the products promised by P&G, and Plaintiff Trent and members

of the Florida Class did not obtain safe products suitable for human application, as promised by P&G. P&G's conduct directly and proximately caused Plaintiff Trent and the Florida Class actual monetary damages in the form of the price paid for the Recalled Products. The injuries, damages, and harm caused to Plaintiff Trent and the Florida Class by P&G's unfair conduct are not outweighed by any countervailing benefits to consumers. Had P&G disclosed that the Recalled Products contained the carcinogen benzene, Plaintiff Trent and members of the Florida Class would not have purchased the Recalled products or would have paid less for them.

198.    P&G's "unfair" or "deceptive" business practices alleged herein constitute an ongoing course of wrongful conduct prohibited by the FDUTPA because P&G markets and sell the Recalled Products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to its customers. Plaintiff Trent and the Florida Class therefore seek equitable and declaratory relief to remedy P&G's deceptive advertising, packaging, and labeling of the Recalled Products under the FDUTPA, Fla. Stat. § 501.211(1).

199.    Plaintiff Trent and the Florida Class also seek an order requiring P&G to make full restitution of all monies it has wrongfully obtained from Plaintiff Trent and the Florida Class and to pay damages, along with all other relief permitted under the FDUTPA, Fla. Stat. §§ 501.211(2), 501.2105.

### SEVENTEENTH CLAIM FOR RELIEF
**Violations of the Florida Misleading Advertising Statute**
**Fla. Stat. § 817.41**
***(On Behalf of Plaintiff Trent and the Florida Class)***

200.    Plaintiff Trent, individually and on behalf of the Florida Class, incorporates by reference all the allegations contained in the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

201.    Plaintiff Trent brings this claim individually and on behalf of the Florida Class against P&G.

202.    Florida's misleading advertising statute, Fla. Stat. § 817.41(1), prohibits "any person to make or disseminate or cause to be made or disseminated before the general public of the state, or any portion thereof, any misleading advertisement. Such making or dissemination of misleading advertising shall constitute and is hereby declared to be fraudulent and unlawful, designed and intended for obtaining money or property under false pretenses."

203.    Fla. Stat. § 817.40(5) broadly defines "misleading advertising" to include "any statements made, or disseminated, in oral, written, electronic, or printed form or otherwise, to or before the public, or any portion thereof, which are known, or through the exercise of reasonable care or investigation could or might have been ascertained, to be untrue or misleading, and which are or were so made or disseminated with the intent or purpose, either directly or indirectly, of selling or disposing of real or personal property, services of any nature whatever, professional or otherwise, or to induce the public to enter into any obligation relating to such property or services."

204.    P&G represented that its Recalled Products were safe and fit for human application. P&G represented that benzene was one of the materials that P&G did not use in its formulated products, including in the Recalled Products. However, in truth the Recalled Products contained the carcinogen benzene. At the time P&G made these representations, P&G knew that they were false.

205.    P&G's representations regarding the safety and ingredients in the Recalled Products, and its omission that they contained benzene, are material facts to Plaintiff Trent and members of the Florida class. P&G knows that such representations and omissions are material to reasonable consumers and intends that consumers rely upon these representation and omissions when choosing to purchase the Recalled Products.

206.    P&G knew that its misrepresentations and omissions regarding the Recalled Products would materially affect Plaintiff Trent and the Florida Class members' decisions to purchase the Recalled Products.

207.    Acting as reasonable consumers, Plaintiff Trent and members of the Florida Class were unaware of P&G's affirmative misrepresentations and active concealment of material facts

regarding the Recalled Products. Rather, they believed that P&G's Recalled Products were safe and fit for human application, as advertised. Plaintiff Trent and members of the Florida Class reasonably relied on P&G's misrepresentations and omissions regarding the Recalled Products in connection with their decisions to purchase the Recalled Products.

208.    As a direct and proximate result of P&G's misrepresentations regarding the Recalled Products, Plaintiff Trent and members of the Florida Class were deceived. If the true facts had been known, Plaintiff Trent and members of the Florida Class would not have purchased the Recalled Products or would have paid less for them.

209.    P&G has thus engaged in the dissemination of misleading advertising, in violation of Fla. Stat. § 817.41(1). The actions of P&G caused damage to Plaintiff Trent and members of the Florida Class, who are therefore entitled to damages in an amount to be proven at trial and equitable relief as a result.

210.    P&G's conduct further constitutes fraud, actual malice, or deliberate oppression. P&G acted with actual knowledge of the wrongfulness of its actions and the high probability that damage to Plaintiff Trent and the Florida Class would result and, despite that knowledge, intentionally pursued the course of conduct described herein, resulting in damage. At a minimum, P&G's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the rights and interests of Plaintiff Trent and the Florida Class, who were exposed thereto.

**EIGHTEENTH CLAIM FOR RELIEF**
**Unjust Enrichment**
***(On Behalf of All Plaintiffs and the Nationwide Class)***

211.    Plaintiffs, individually and on behalf of the Nationwide Class, incorporate by reference all the allegations contained in the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

212.    Plaintiffs and Nationwide Class Members conferred non-gratuitous benefits on P&G by purchasing the Recalled Products which were worthless or otherwise overpriced. P&G

45

appreciated, accepted, and retained such benefits conferred by Plaintiffs and members of the Nationwide Class with knowledge and awareness that they were receiving falsely and misleadingly advertised Recalled Products which failed to state the products were contaminated with the carcinogen benzene.

213.    Retention of such benefits under the circumstances is accordingly unjust and inequitable. P&G profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiffs and members of the Nationwide Class. Absent P&G's misleading and deceptive representations regarding the Recalled Products, Plaintiffs and each member of the Nationwide Class would not have purchased the products at issue or would have paid substantially less for such health and beauty products. As such, Plaintiffs and other members of the Nationwide Class conferred an improper windfall upon P&G, which knew of the windfall and has unjustly retained such benefits.

214.    As a direct and proximate result of P&G's unjust enrichment, under principles of equity and good conscience, Plaintiffs and the Nationwide Class are entitled to full disgorgement and restitution of all amounts by which P&G was enriched through its unlawful or wrongful conduct.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Nationwide Class and Subclasses, request that the Court order the following relief and enter judgment against P&G as follows:

A.    An Order certifying the proposed Nationwide Class and Subclasses under Fed. R. Civ. Proc. 23;

B.    An Order appointing Plaintiffs to represent the Nationwide Class and Subclasses;

C.    A declaration that P&G engaged in the illegal conduct alleged herein;

D.    An Order that P&G be permanently enjoined from its improper activities and conduct described herein;

E. A Judgment awarding Plaintiffs and the Nationwide Class and Subclasses restitution and disgorgement of all compensation obtained by P&G from its wrongful conduct;

F. A Judgment awarding Plaintiffs and the Nationwide Class and Subclasses compensatory damages and punitive damages, where available, in an amount to be proven at trial;

G. Prejudgment and post-judgment interest at the maximum allowable rate;

H. An Order awarding Plaintiffs and the Nationwide Class and Subclasses reasonable litigation expenses, costs, and attorneys' fees;

I. An Order awarding such other injunctive and declaratory relief as is necessary to protect the interests of Plaintiffs and the Nationwide Class and Subclasses; and

J. An Order awarding such other and further relief as the Court deems necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury for all claims and issues so triable.


Dated: May 2, 2022                                    Respectfully submitted,

*/s/ Joseph F. Murray*
Joseph F. Murray, Trial Attorney (0063373)
**Murray Murray Moul + Basil LLP**
1114 Dublin Rd.
Columbus, OH 43215
Tel:     (614) 488-0400
Fax:     (614) 488-0401
murray@mmmb.com

Robert C. Schubert
(*pro hac vice* application to be filed)
Dustin L. Schubert
(*pro hac vice* application to be filed)
Noah M. Schubert
(*pro hac vice* application to be filed)
**Schubert Jonckheer & Kolbe LLP**

3 Embarcadero Center, Suite 1650
San Francisco, CA 94111
Tel:    (415) 788-4220
Fax:    (415) 788-0161
rschubert@sjk.law
dschubert@sjk.law
nschubert@sjk.law